UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 10-CR-20094 |
| ) | |
| CORNELIUS C. MITCHELL, ) | |
| ) | |
| Defendant. ) | |

# OPINION
_____

On March 9, 2011, Defendant Cornelius C. Mitchell filed a Motion to Suppress Alleged Confession (#18), with the government filing its Response (#19) on April 28, 2011. The Motion moved to suppress a written statement made by the Defendant to law enforcement without proper Miranda v. Arizona, 384 U.S. 436 (1966) admonitions, as the confession was taken after the Defendant requested an attorney. On June 9, 2011, an evidentiary hearing was held before this court. On June 28, 2011, the Defendant filed a Brief in Support of Motion to Suppress Alleged Confession (#23) and the government filed its Response (#24) on July 11, 2011. Following a thorough and careful review, Defendant's Motion to Suppress Alleged Confession (#18) is DENIED.

BACKGROUND

The government and Defendant offer differing versions of the facts. The government's facts are as follows. Pursuant to a search warrant, the Champaign Police Department began observing 1806 S. Cottage Grove, Apartment #407, hereinafter referred to as 407, on November 4, 2010. The police witnessed the Defendant exit the apartment building and drive away in his

car. The police then conducted a traffic stop and transported the Defendant back to 407. Coinciding with the traffic stop, police officers entered 407. While in 407, officers located the Defendant's wife, Kristin Ragland (Ragland), in the southeast bedroom. Ragland was moved to the living room to be interviewed by Officer Jaceson Yandell (Yandell) while the rest of the officers conducted the search.

Around 2:00 pm officers found suspected crack cocaine and cannabis in the southeast bedroom and Yandell decided to interview Ragland. During this interview, the Defendant arrived and Yandell stopped the interview to check on the Defendant. When the interview resumed, Yandell showed Ragland where officers found the suspected crack cocaine and cannabis. Ragland stated that the drugs had not been there the day before. Yandell escorted Ragland back into the living area.

Around 2:23pm Yandell and Urbana Police Officer Duane Maxey (Maxey) advised the Defendant verbally of his <u>Miranda</u> rights and the Defendant agreed to speak with the officers. During this interview, the Defendant admitted that he occasionally slept in the southeast bedroom and that he removed the drugs from the motel he was staying at and brought them to 407. Sometime during this interview, Yandell asked the Defendant whether he was willing to provide information about his supplier. At this point, the Defendant stated he wished to speak to an attorney before answering any more questions and the interview was terminated.

After the interview was terminated, police officers located a firearm inside a purse in the southeast bedroom's closet. Yandell and Urbana Police Officer Mike Cervantes (Cervantes) escorted Ragland to the bathroom to interview her. Yandell advised her of her <u>Miranda</u> rights and Ragland agreed to speak with Yandell. Ragland stated that she did not own any firearms and

denied that the gun belonged to her. Yandell finished interviewing Ragland and returned her to the dining area. Upon Ragland's return to the dining area, the Defendant kept muttering "It's not her, It's not her..." Yandell reminded the Defendant that he invoked his right to an attorney, and if he wanted to talk to him he could, but Yandell was not going to ask any questions of him. The Defendant stated that he wanted to talk and was willing to give a statement if Ragland was present.

Pursuant to the Defendant's wishes, Yandell and Officer Matt Henson (Henson) brought the Defendant to the dining room table where the Defendant was advised once again of his <u>Miranda</u> rights via a written form, which he signed at approximately 3:19 pm. Agents asked if the Defendant was willing to provide a written statement and the Defendant began writing a statement but stopped, stating that he had a question for his attorney. Yandell inquired as to who the Defendant's attorney was and the Defendant stated it was Ed Piraino (Piraino). Yandell reached Piraino's secretary and stated that he was with the Defendant and the Defendant wanted to talk to Piraino. The secretary told Yandell that Piraino was not available and she would try and get in touch with him. Ragland suggested another attorney, Bob Auler (Auler). However, the Defendant was unable to reach anybody at Auler's office. Yandell then asked the Defendant if it was a question that he could answer. The Defendant stated he wanted to make sure that Ragland was not going to be charged. Yandell told the Defendant he had no intention of charging Ragland. Yandell called Assistant United States Attorney Ronda Coleman and she explained to the Defendant that Ragland would not be charged. After the conversation ended, the Defendant agreed to continue writing his statement. Then Piraino's secretary called back and advised the Defendant not to say anything further. The interview was terminated and the written

statement was left incomplete and unsigned.

The Defendant offers a different version of the key facts. According to the Defendant, upon his arrival he was seated in the living room. The Defendant denies that he made any spontaneous statement that the gun or drugs were his, as alleged by the government. The Defendant contends that after arriving at the apartment, his first conversation was with an African American police officer. Specifically, the Defendant asked the officer who was in charge and the officer replied, Yandell. The Defendant then met with Yandell, Henson, and Ragland at the dining room table. The Defendant claims that the conversation at the dining room table started with him asking for an attorney in order to avoid incriminating himself or getting his wife in trouble. Yandell then asked who the Defendant's attorney was. The Defendant stated Ed Piraino and Yandell or Henson called Piraino's office. The phone was then handed to the Defendant, at which time the Defendant determined that no one at Piraino's office was answering the phone. Ragland then stated she knew of another attorney, Auler. Ragland then called Auler but no one answered at his office.

The Defendant then expressed concern that Ragland would be prosecuted. One of the agents called Assistant United States Attorney Ronda Coleman who told the Defendant she had no jurisdiction to prosecute Ragland. At that time, the Defendant agreed to speak with the officers and was give a written Miranda waiver which he signed. The Defendant then started writing a confession. But the Defendant was interrupted by a call from an employee at Piraino's office. The Defendant was advised not to say anything further. The Defendant took this advice and furnished no further oral or written statements.

ANALYSIS

In his Motion (#18) and Brief (#23) the Defendant challenges only the written statement taken at the dining room table.[1] The Defendant argues that the statement was taken in violation of Miranda because it occurred after the Defendant requested an attorney. A suspect must be informed of, and voluntarily waive, his right to counsel before being subjected to custodial interrogation. Miranda, 384 U.S. at 444. A suspect's waiver of right to counsel is only valid if the wavier is knowing and voluntary under the "totality of the circumstances." United States v. Robinson, 586 F.3d 540, 545 (7th Cir. 2009), quoting Edwards v. Arizona, 451 U.S. 477, 489 n. 9 (1981). "Once a suspect has informed the police that he wishes to consult with a lawyer, all interrogation of the suspect must cease 'until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" Robinson, 586 F.3d at 545, quoting Edwards, 451 U.S. at 484-85. However, "a suspect initiates conversation if he makes a statement that 'evince[s] a willingness and a desire for a generalized discussion about the investigation." Robinson, 485 F.3d at 545, quoting Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983). "By itself, a suspect's initiation of conversation does not necessarily constitute a waiver of his right to counsel; the suspect's waiver must also be knowing and voluntary, under the totality of the circumstances, before law enforcement agents engage in any interrogation." Robinson, 485 F.3d at 545.

---

[1] It should be noted that in the original Motion to Suppress (#18) Defendant is not specific as to what statements he wanted suppressed. In the Brief in Support of Motion to Suppress Alleged Confession (#23), filed after the June 9, 2011 evidentiary hearing, Defendant specifically requests only the suppression of the written statement. In the Brief (#23), Defendant states "The parties agree a conversation ensued at the dining table adjacent the living room; it is this conversation which [D]efendant challenges in his motion to suppress." Defendant later states in the Brief "[t]he only interview challenged by Defendant on Fifth Amendment grounds is the statement he testified occurred at the dining table with Agents Yandell and Henson, and Kristen present and sitting around the table."

Before applying the aforementioned law, this Court must make a credibility determination as the Defendant's version of the facts differs from the governments'. This Court finds the government's time line credible. At the suppression hearing, the government offered the testimony of Officers Yandell and Henson in support of their time line. Officers Yandell's testimony was substantially consistent with Henson's. Further, Officers Yandell and Henson are experienced officers who have each served eight years with the City of Champaign Police Department. On the other hand, the Defendant's testimony jumbled the sequence of events. For example, the Defendant testified that Piraino's secretary returned his phone call advising him not to talk, even though the Defendant testified earlier that he was unable to reach anyone at Piraino's office, and therefore had no opportunity to tell anyone at the office he was in need of assistance. Based on this court's observation of the witnesses reactions, expressions, attitudes, and eye contact at the suppression hearing, this court finds the government's witnesses credible and thus accepts time line set out by the government.

In adopting the government's time line, it is clear that the partial statement is admissible. Although the Defendant invoked his right to an attorney after receiving a verbal <u>Miranda</u> warning, the partial statement is admissible because, under the totality of the circumstances, the Defendant's initiation of the conversation and subsequent waiver of counsel was knowing and voluntary. Once the gun was found in the purse, the Defendant, without any prompting from Yandell, blurted out that "it's not her..." Yandell reminded the Defendant that he invoked his <u>Miranda</u> right to an attorney and the Defendant stated that he wished to speak with the police officers. Yandell read the Defendant his rights again and had the Defendant sign a pre-printed <u>Miranda</u> form. After signing the form, the Defendant began writing his statement until stopping

to tell the officers he had a question for his attorney. Therefore, under the totality of the circumstances, whatever the Defendant wrote prior to stating that he had a question for his attorney is admissible.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Suppress Alleged Confession (#18) is DENIED.

(2) This case remains set for a status conference on Thursday, July 28, 2011, at 10:30 am in Courtroom A.

ENTERED this 22nd day of July, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE